UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM CARTER and<br>MARK SHILLING, on behalf of Themselves<br>And All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>INDIANA STATE FAIR COMMISSION,<br><br>　　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:11-cv-00852-TWP-TAB<br>)<br>)<br>)<br>)<br>) |

**ENTRY ON PENDING MOTIONS**

This matter is before the Court on Defendant Indiana State Fair Commission's ("ISFC") motion for summary judgment (Dkt. 79) and ISFC's objection to the Magistrate Judge's Order on Plaintiffs' Second Motion for Leave to Amend the Complaint (Dkt. 106). Plaintiffs William Carter ("Mr. Carter") and Mark Shilling ("Mr. Shilling") (collectively "the Plaintiffs") filed suit against the ISFC alleging violations of the Fair Labor Standards Act ("FLSA"); specifically that they, and others, were not paid for overtime as required under the FLSA. In addition, the Court granted Plaintiffs' motion to seek conditional certification of a collective action under the FLSA, consisting of all present and former hourly security officers that were compensated by the ISFC and who worked over forty hours in a workweek since January 1, 2009 (Dkt. 104). ISFC brings the current motion alleging that it is entitled to Eleventh Amendment immunity as an arm of the State of Indiana. For the following reasons, ISFC's motion is **GRANTED** (Dkt. 79).

**I. BACKGROUND**

The facts detailing the underlying issues of the lawsuit are found in the Court's Entry on Plaintiffs' motion to certify class (Dkt. 104), as well as in the Magistrate Judge's Report and

1

Recommendations on the same motion (Dkt. 84). Because the current motion concerns only ISFC's Eleventh Amendment Immunity, the Court need not engage in a detailed recitation of these facts. Therefore, the Court will only recite facts relevant to the current motion.

Mr. Carter, Mr. Shilling and other seasonal employees of the ISFC allege the ISFC violated the FLSA by failing to pay its hourly security officers and employees time and a half for overtime hours worked. The ISFC argues Plaintiffs' lawsuit for alleged violations is unequivocally barred by the Eleventh Amendment as they are a part of the State and therefore, entitled to immunity.

The ISFC is tasked with maintaining, developing, and administering the Indiana state fairgrounds for the benefit of Indiana citizens. Ind. Code § 15-13-3-2. The ISFC is responsible for holding the annual State Fair, and "[h]olding the fair shall be given priority over all other activities by the commission during the period the fair is held." I.C. § 15-13-3-3(a). The Indiana Code describes the ISFC as "a separate body, corporate and politic" that is "not a state agency" but that "performs essential governmental functions." I.C. § 15-13-2-1(b). The IFSC is comprised of eight members, five of which are appointed by the Governor. I.C. § 15-13-2-2(a)(1).

In 2007 through 2010, the ISFC's revenues derived from activities on the state fairgrounds, including the annual state fair, were not sufficient to pay the ISFC's annual expenses. Consequently, for the past five years, the ISFC has received annual and fixed state appropriations, including annual appropriations from the legislature and fixed appropriations from property taxes and state regulated gaming activity. Additional relevant facts will be added below, as necessary.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III.  DISCUSSION

### A.  Eleventh Amendment Immunity Standard

The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.  The Supreme Court has extended the Amendment beyond its language to provide immunity for an unconsenting State from suits brought in federal courts by citizens of that same state. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  There are three exceptions to Eleventh Amendment immunity. "First, a state may waive immunity by consenting to suit in federal court; second, Congress may abrogate the state's immunity through a valid exercise of its powers; third, under the *Ex Parte Young* doctrine, a plaintiff may file suit against state officials seeking prospective equitable relief for ongoing violations of federal law." *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007).  In this case, the State has not waived immunity, Congress did not abrogate states' Eleventh Amendment immunity in passing FLSA, *see Mueller v. Thompson*, 133 F.3d 1063, 1064 (7th Cir. 1998), and there is no allegation of the *Ex parte Young* doctrine's applicability. Therefore, none of the exceptions is relevant in this case.

The Supreme Court has also extended Eleventh Amendment immunity to state agencies, as arms of the state.  *See id.* at 663.  To determine if a particular state agency or entity is an arm of the state, courts consider two factors:  "(1) the extent of the entity's financial autonomy from the state; and (2) the 'general legal status' of the entity." *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008) (citing *Kashani v. Purdue Univ.*, 813 F.2d 843, 845–47 (7th Cir. 1987)).

### B.  ISFC's Degree of Financial Autonomy

"In deciding whether an entity is an agency of the state, the most important factor is 'the extent of the entity's financial autonomy from the state.'"  *Peirick*, 510 F.3d at 695 (quoting *Kashani*, 813 F.2d at 845).  The financial inquiry involves five subparts:  "(1) the extent of state

funding; (2) the state's oversight and control of the entity's fiscal affairs, (3) the entity's ability to raise funds; (4) whether the entity is subject to state taxation; and (5) whether a judgment against the entity would result in an increase in its appropriations." *Id.* at 696.

The ISFC contends it is heavily dependent on the State of Indiana for financial funding and that its financial matters are tightly controlled by the State. Plaintiffs respond that "[t]here is no question that the ISFC, not the State of Indiana, will be responsible for paying the eventual judgment in this case." Dkt. 91 at 6. To make the determination, the Court will look to the statutes governing the ISFC and its financial status.

**1. Extent of State Funding**

Indiana Code section 15-13-8-3(a)(2) provides that the ISFC's State Fair Fund consists of appropriations made by the General Assembly. The ISFC's Chief Financial Officer, David Ellis, attests that in the past five calendar years, "approximately one-third of the ISFC's total revenues have been derived from annual and fixed state appropriations from the state including annual appropriations from the General Assembly and fixed appropriations from property taxes and state regulated gaming activity." Dkt. 81-1 at 2 ¶ 4. In 2010, the State Board of Accounts ("SBOA") Audit Report[1] shows that State appropriations to the ISFC totaled $7,226,920.00. This amount was split between property tax distributions, State general fund appropriations, riverboat distributions, and pari-mutual, off track betting distributions. This amount was also over one-quarter of ISFC's total revenues in 2010. Similar revenues and appropriations are recorded for 2007, 2008, and 2009.

Plaintiffs acknowledge that the ISFC receives funds from gambling tax revenues, but focuses on the "pretty small" appropriations from the General Assembly: in 2010,

---

[1] The ISFC is subject to audit by the state board of accounts. I.C. § 15-13-3-7(b).

5

approximately 2% of the ISFC's revenues.[2]  Dkt. 91 at 7.  However, Plaintiffs ignore that the dedicated funding, or "state funds that the state budget director determines are necessary to support an agency," *Roberts v. Indiana Bureau of Motor Vehicles*, No. 1:10-cv-0176-TWP-TAB, 2011 WL 6943092, at *3 (S.D. Ind. Dec. 15, 2011),[3] that ISFC receives is still State appropriations.  Therefore, it is clear that the SBOA audit reports from the years 2007 through 2010 show that the ISFC's revenues from the annual State Fair were not sufficient to pay for ISFC's annual expenses and appropriations from the State were required to meet expenses.  This factor indicates that the ISFC is not financially autonomous from the State.  *See Peirick*, 510 F.3d at 696 (noting defendant's limited financial autonomy when 24% of assets were derived from state appropriations).

## 2. Extent of State Oversight

The ISFC's use of funds is dictated by statute.  The funds may be used to pay the ISFC's expenses and to make lease payments.  I.C. § 15-13-8-6.  The funds are subject to allotment under Indiana Code section 4-13-2-18.  I.C. § 15-13-8-7.  In other words, funds appropriated to the ISFC cannot be used until it submits "to the state budget agency a request for allotment to consist of an estimate of the amount required for each activity and each purpose for which money is to be expended during the applicable allotment period."  I.C. § 4-13-2-18(c)(1).  Moreover, the ISFC has no control over funds not needed to cover expenses or obligations.  "The treasurer of the state shall invest the money in the fund not currently needed to meet the obligations of the fund in the same manner as other public funds may be invested."  I.C. § 15-13-8-4.  However, any interests on investments are deposited back into the fund.

---

[2] Plaintiff reached this number by taking the amount of the "State General Fund Appropriations" and dividing this number by the annual operating expenses for a particular year.

[3] This Report and Recommendation from the Magistrate Judge was adopted by No. 1:10-cv-176-TWP-TAB, 2012 WL 27701 (S.D. Ind. Jan. 4, 2012).

Additionally, the ISFC is required to submit annual reports to the Governor, Budget Committee, and General Assembly. I.C. § 15-13-3-10. The ISFC is further subject to annual audit by the SBOA. I.C. § 15-13-3-7(b). And although the ISFC may establish accounts other than the State Fair Fund, these accounts are still subject to SBOA audit. I.C. § 15-13-8-8. In *DeHarder Inv. Corp.v. Ind. Housing Fin. Auth., 909 F. Supp. 606, 611–12 (S.D. Ind. 1995)*, the court noted that similar oversight was "narrow," especially considering the defendant's financial independence. However, in *DeHarder*, the court further noted that the defendant was not subject to the Budget Agency Act, I.C. § 4-12-1-1 *et seq.*, which requires state agencies to submit detailed statements of their budgets. *Id.* at 612 n.3. In this case, the ISFC does submit an annual report to the Budget Committee. *See* I.C. § 4-12-1-3 (creation of budget agency and committee).

Despite some facts that support a degree of financial independence, the Court finds this factor also indicates the ISFC is not financially autonomous from the State. *See Turner v. State of Ind. Teacher's Retirement Fund*, No. 1:07-cv-1637-DFH-JMS, 2008 WL 2324114, at * 3 (S.D. Ind. June 5, 2008) (noting "extensive financial oversight by the State" when defendant was required to submit annual reports and financial statements" to governor, a commission, and the Budget Agency).

### 3. Ability to Raise Revenues

In 2011, the ISFC raised over $14 million in revenues from the State Fair and other non-fair operations. Dkt. 78-6 at 1. These operations are the ISFC's main revenue source. The ISFC is also authorized to issue revenue bonds under Indiana Code section 15-13-10-1 *et seq*. The revenue bonds may only be issued, subject to the approval of the Governor, to pay for the cost of a project[4] or to refund outstanding revenue bonds. I.C. § 15-13-10-3. There is no general

---

[4] A "project" is defined as concerning property at the fairgrounds, including acquisition, construction, repair, and refurbishing. I.C. § 15-13-10-2.

authority to issue bonds to fund operations or to pay a judgment. The ISFC's authority to issue revenue bonds is strictly prescribed by statute and is quite narrow. Additionally, the ISFC has no authority to issue taxes. Therefore, this factor indicates the ISFC is not financially autonomous from the State. *See Kashani*, 813 F.2d at 846 (finding the lack of authority to issue bonds to pay judgments or to tax "ensures ultimate fiscal reliance upon the state").

### 4. Exempt from State Taxation

The fairgrounds and property of the ISFC are exempt from state and local taxes, license fees, and special assessments, I.C. § 15-13-4-4, "a relief that some courts find indicative that an entity is an arm of the state rather than a subdivision. Indiana, however, extends that relief also to political subdivisions, so the factor has less force in this case." *Kashani*, 813 F.2d at 846.

### 5. Effect of Judgment on State Treasury

Given that the ISFC is heavily dependent upon State appropriations to meet its expenses, and the ISFC cannot issue revenue bonds to pay the judgment, nor can it levy taxes, any judgment against the ISFC would theoretically result in an increase in appropriations. The ISFC contends that the 2011 stage-rigging collapse at the annual State Fair and the resulting compensation fund of $11 million dollars from the state of Indiana and not the ISFC demonstrates that a judgment against ISFC in this case would affect the State treasury.[5] The General Assembly created the fund under the Torts Claim Act, which settles and satisfies tort judgments obtained against the State, including state agencies. I.C. §§ 34-12-3-24, 36-6-2-140. Plaintiffs argue that because the ISFC can and does generate significant revenues, an eventual judgment would be paid from this revenue. Plaintiffs ignore, however, the fact that the ISFC

---

[5] The facts relating to the stage-rigging collapse at the Indiana State Fair Grounds are recited in *Estate of VanDam ex rel. Horizon Trust & Inv. Mgmt., N.A. v Daniels*, 278 F.R.D. 415 (S.D. Ind. 2011).

also generates significant expenses, which cannot be paid without substantial State appropriations.[6]

The Court disagrees with Plaintiffs' reasoning and finds that a judgment against the ISFC would require more appropriations impacting the State treasury. Therefore, taken as a whole, all the factors demonstrate that the ISFC enjoys minimal financial autonomy weighing in favor of immunity.

### C.  ISFC's General Legal Status

In examining the general legal status of a state entity, courts consider the statutory definition of the entity, the selection of the members of the governing body, the entity's powers, and whether the entity serves the State as a whole or only a region. *Turner*, 2008 WL 2324114, at *4. Consideration of the general legal status of the entity prioritizes substance over form. *Peirick*, 510 F.3d at 596. The ISFC argues each of these factors lead to the conclusion that it is an arm of the State. Plaintiffs focus on the ISFC's powers to conclude that the ISFC is a separate legal entity. The Court will make this determination relying on the relevant statutory provisions.

The IFSC was established by the State to "perform essential governmental functions." I.C. § 15-13-2-1(b)(3). The ISFC is comprised of eight members, five of which are appointed by the Governor. I.C. § 15-13-2-2(a)(1). Any vacancies are filled by the Governor. I.C. § 15-13-2-4(a). Each member serves a four-year term. I.C. § 15-13-2-3. The ISFC may hold property in its own name, I.C. § 15-13-4-1, but the ISFC holds the state fairgrounds in trust for the State, and cannot dispose of the fairgrounds unless authorized by statute. I.C. § 15-13-4-2. Moreover, the ISFC cannot dispose of any real property it owns without consent of the Governor. I.C. § 15-13-

---

[6] Plaintiffs further rely on a 1991 Office of the Indiana Attorney General opinion that stated debts of the ISFC were not debts of the State. However, this opinion referred to the indebtedness under the Indiana Constitution caused by a default on commission bonds and related debts. This concept was codified at Indiana Code section 15-13-10-8. The Court does not accord the opinion much weight in the context of this case.

4-3. The ISFC may enter into contracts, purchase, lease, and sell real and personal property, and make improvements to the fairgrounds. I.C. § 15-13-3-4. Finally, the ISFC's primary purpose is to hold the State Fair each year for the benefit of the entire State. I.C. § 15-13-3-3.

The Court finds that the ISFC does possess independence in its operations. In *Turner*, the court found that the defendant's independence was "undercut by the fact that all of the members of the board are selected by the governor and serve for a maximum of four years" because "[t]hese characteristics lead to the conclusion that the functions granted [the defendant] look less like [ ] independent powers . . . than like the authority delegated to an instrumentality of the state to spare the legislature the need to ratify its every action." 2008 WL 2324114, at *5. As in *Turner*, the facts that a majority of the ISFC is appointed by the commissioner, its independent powers are still limited, and it serves the entire State, convince the Court that the ISFC looks more like an entity delegated with authority to "spare the legislature the need to ratify its every action," *id.*, rather than an independent entity. Also, as noted in *Turner*, the fact that the ISFC is defined as "a separate body, corporate and politic" that is "not a state agency," I.C. § 15-13-2-1(b), does not change the Court's ruling. *See Turner*, 2008 WL 2324114, at *4–5 (finding identical language was not determinative and noting that universities are defined by the same language yet are uniformly held to be arms of the State). Taking substance over form, the Court finds that the ISFC's general legal status weighs in favor of immunity.

## IV. **PENDING OBJECTION**

On September 21, 2012, the Magistrate Judge granted Plaintiffs' request to file their Second Amended Complaint. (Dkt. 99.) The amended complaint adds an alternate theory of recovery under the Indiana Minimum Wage Act (Dkts. 83, 100.) The ISFC objects to the Magistrate Judge's Order granting the amendment (Dkt. 106) under Federal Rule of Civil

Procedure 72(a). The Court will review the Order under the clear error standard. "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir.1997).

The ISFC contends it was clear error to allow Plaintiffs to add their Indiana Minimum Wage Act claim. ISFC raises several arguments.[7] First, ISFC argues it was error to allow the amendment before this Court decided the pending Motion for Summary Judgment on Eleventh Amendment immunity; specifically, that Plaintiffs intentionally and impermissible filed the state law claim in the "wrong court" to toll the statute of limitations. However, the ISFC cites no legal authority that supports its claim that it is impermissible to file alternative theories of state relief while awaiting judgment on a pending summary judgment motion. The ISFC also argues that because the Eleventh Amendment limits the jurisdiction of federal courts, it was premature to allow a state law claim that, if the summary judgment motion were granted, would necessarily be dismissed under *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). Again, although ISFC asserts the amendment was "contrary to law," it cites no authority that supports its proposition.

Second, the ISFC argues the Order erroneously allowed Plaintiffs leave to file an indisputably futile claim; specifically, "[t]he state law claim filed by Plaintiffs can *never* be viable in this Court because Indiana's Minimum Wage Act, by its terms, only applies *if the FLSA does not apply*." Dkt. 106 at 5. The ISFC is correct that since Eleventh Amendment immunity exists, the state law claims cannot go forward in this Court under *Pennhurst*. Additionally, it is correct that had Eleventh Amendment immunity not applied, the state law claim would not be

---

[7] Having decided the Eleventh Amendment immunity question in this Entry, the Court need not separately address the ISFC's argument disputing the same.

viable under the Minimum Wage Act's terms. Although Federal Rule of Civil Procedure 15(a)(2) reflects a liberal attitude toward amendments, *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008), states that a district court may deny a plaintiff leave to amend when an amendment is futile. Where, as here, discovery has been conducted, the futility standard states that "[i]f the amended claim would not survive a motion for summary judgment, the amendment is futile." *Sound of Music Co. v. Minn. Min. & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007). Plaintiffs' have provided no authority that the Court may allow amendment of a futile claim. Under no set of facts could Plaintiffs' state law claim survive a motion for summary judgment in this court. Therefore, the Court finds the amendment is futile in this court and the amendment should not have been granted. The ISFC's objection is sustained and the Second Amended Complaint is vacated.

## V. CONCLUSION

For the reasons set forth above, the Court finds that the ISFC's lack of financial autonomy and general legal status establish that it is an arm of the State for Eleventh Amendment immunity purposes. Therefore, the ISFC enjoys Eleventh Amendment immunity from Plaintiffs' claims under the Fair Labor Standards Act. The ISFC's Motion for Summary Judgment (Dkt. 79) is **GRANTED.** Further, the ISFC's objection to the Magistrate Judge's Order on Plaintiffs' Second Motion for Leave to Amend the Complaint (Dkt. 106) is **SUSTAINED** and the Second Amended Complaint (Dkt. 100) is **VACATED**. Finally, Plaintiffs' Motion to Approve Notice and Opt-in Form (Dkt. 117) is **DENIED** as moot.

SO ORDERED.    11/20/2012

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Andrew P. Wirick
HUME SMITH GEDDES GREEN & SIMMONS
awirick@humesmith.com

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Edward F. Harney, Jr.
HUME SMITH GEDDES GREEN & SIMMONS
eharney@humesmith.com

Patricia Orloff Erdmann
INDIANA OFFICE OF THE ATTORNEY GENERAL
Patricia.Erdmann@atg.in.gov

Don R. Hostetler
OFFICE OF THE ATTORNEY GENERAL
donald.hostetler@atg.in.gov

Ronald E. Weldy
WELDY & ASSOCIATES
weldy@weldylaw.com